IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NICOLE BASILE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| PROMETHEUS GLOBAL MEDIA, | ) | |
| LLC, GREGG KILDAY, TATIANA | ) | |
| SIEGEL, et al., | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

**COMPLAINT AT LAW**

Plaintiff, Nicole Basile, by her attorneys, Alexander Rufus-Isaacs, Rodney Smolla, and Ian Brenson, for her Complaint against Defendants, Prometheus Global Media, LLC, Gregg Kilday, Tatiana Siegel, alleges as follows:

**Parties, Venue and Jurisdiction**

1. Plaintiff Nicole Basile is a citizen of Illinois and resides in Manhattan, Illinois.

2. Upon information, Defendant Prometheus Global Media, LLC ("Prometheus") is a limited liability corporation based in New York, New York, which publishes The Hollywood Reporter ("THR") as a weekly large-format print magazine, on a website (http://www.hollywoodreporter.com), and as mobile and tablet editions, all of which are widely read within the entertainment industry.

3. Upon information, Defendants Gregg Kilday and Tatiana Siegel are citizens of California and employed by Prometheus as journalists on THR.

4.      Jurisdiction in this matter is properly exercised by this Court pursuant to 28 U.S.C. §1332(a), since the Plaintiff and the Defendants are citizens of different States, and the amount in controversy exceeds $75,000.00.

## Summary

5.      THR published an article by Kilday and Siegel entitled "Sony Hack: Studio Security Points To Inside Job" issue ("Article") on its website on or about December 3, 2014 (www.hollywoodreporter.com/news/sony-hack-studio-security-points-753509), in its magazine's December 12, 2014 issue, and in its mobile and tablet editions between those two dates. The Article singles out Ms. Basile and falsely communicates, explicitly and by undisguised implication, that she was one of the hackers responsible for the infamous cyberattack on Sony.

6.      This Article has destroyed Ms. Basile's reputation, rendering her an untouchable within the industry, and destroying her career. For the past several years, she worked more or less continuously with only short breaks as a freelance production accountant on various films, with increasing responsibility and better pay. However, since the Article was published, she has not been offered a single job that is commensurate with her experience. Defendants have, in short, destroyed the career that Ms. Basile built for herself with almost a decade of hard work. Further, in early 2015, Ms. Basile suffered severe abdominal pains which caused her doctors to perform surgery because they thought she had a serious internal problem. In fact, no physical issue was found – her doctor subsequently told her that her symptoms were almost

certainly caused by stress, and the cause of her stress was the Article and its consequences for her life.

## Allegations Common to all Counts

7. The Article begins with a description of the cyberattack. The Article then engages in a relentless defamation campaign against Ms. Basile, deliberately pointing to her as the nefarious wrongdoer responsible for the attack. The Article's intentional and callously executed attack on Ms. Basile is launched with a rhetorical question: "Now the question of who is behind the attack has become a chilling Hollywood whodunit. While the hackers have identified themselves only as Guardians of Peace, **emails pointing journalists to allegedly stolen files posted on a site called Pastebin came from a sender named 'Nicole Basile.' A woman by that name is credited on IMDb as an accountant on the studio's 2012 hit film The Amazing Spider-Man, and her LinkedIn page says she worked at Sony for one year in 2011. Basile couldn't be reached for comment and the studio declined to confirm if she works or has worked there**." (Emphasis added).

8. The Article goes on to state that Sony does not believe that North Korea was responsible, but rather communicates, quoting a prominent cybersecurity expert, that a disgruntled former Sony employee with inside knowledge probably did it: "Inside the studio, though, sources say there is little evidence that North Korea is behind the attack. Cybersecurity expert Hemanshu Nigam also finds it hard to believe that North Korea is the perpetrator. Instead, he suggests an employee or ex-employee with administrative access privileges is a more likely suspect. For the studio — which

has laid off hundreds of employees over the past year in an effort to contain costs — the possibility of a disgruntled employee wreaking havoc is very real. … If terabytes of data left the Sony networks, their network detection systems would have noticed easily," explains Nigam. 'It would also take months for a hacker to figure out the topography of the Sony networks to know where critical assets are stored and to have access to the decryption keys needed to open up the screeners that have been leaked.' In addition, he says, 'Hackers don't use such things as Hushmail, Dropbox and Facebook when they want to engage in what amounts to criminal activity. Real hackers know that these sites collect access logs, IP addresses and work with law enforcement. It is possible that North Korean-sponsored hackers were working with someone on the inside. But it is more likely a ruse to shift blame, knowing the distaste the North Korean regime has for Sony Pictures.'"

9. The Article contains numerous false discrete statements about Ms. Basile, and in addition, in its overall meaning, communicates the most damning statement, which is that Ms. Basile was one of the perpetrators responsible for the Sony hack. The Article's defamatory falsehoods include the following:

(a) <u>The Article Falsely Communicates That Ms. Basile's Name Was The Only Alias Used By The Hackers.</u> The Article states that "emails pointing journalists to allegedly stolen files posted on a site called Pastebin came from a sender named 'Nicole Basile.'" This statement, falsely and damningly communicating the message that Ms. Basile was the only person under whose name the hackers were sending emails, was patently untrue. The hackers were sending such emails to journalists using numerous

4

aliases, including THR journalist Lesley Goldberg, and author Michael Lewis. The Article intentionally hid these critical facts from readers, never disclosing that these other aliases were being used. This was a deliberate manipulation, deception, and falsehood by THR. Instead of communicating the truth, which was that the hackers were sending out emails under numerous false names, THR intentionally lied to readers and threw Ms. Basile under the bus, singling her out as the insider hacker responsible for the Sony attack.

(b) <u>The Article Falsely Communicates That Ms. Basile Was A Former Sony Employee.</u> The Article identified Ms. Basile by referring to her imdb entry and her occupation, and then states that her LinkedIn page states that she "worked at Sony for one year in 2011", thereby stating or implying that she had been a Sony employee for a year, but had since left. This is false. Ms. Basile's LinkedIn profile does not state that she "worked at Sony" for a year, Rather, under the heading "Experience" (not "Employment"), it lists many of the films that she has worked on, including *The Amazing Spider-Man*, which is identified as a Sony film. She did indeed work on *The Amazing Spider-Man*, but while doing so, she was employed by a production company, not by Sony. This is no semantic quibble, but rather points to the heart of the matter. The Article was intentionally crafted to point the finger at Ms. Basile as the insider responsible for the attack. To carry out this mission the Article needed to portray Ms. Basile as a Sony insider. In advancing the position that the cyberattack was carried out not by the North Koreans but by a former Sony employee, it was critical that the Article hang out to dry the Sony employee the Article claimed was responsible. By stating that

Ms. Basile worked at Sony for one year in 2011, which the authors of the Article knew to be false, the Article deliberately communicated the message to ordinary reasonable readers that the culprit behind the attack, the insider responsible for making it happen, was Ms. Basile.

(c) <u>The Article Falsely Communicates That Ms. Basile Had Disappeared.</u> Compounding the defamatory meaning of the Article, the Article communicates to readers that Ms. Basile was in hiding, with something to hide. The Article states that Ms. Basile could not be reached for comment. This implies that experienced entertainment journalists such as Mr. Kilday or Ms. Siegel had made reasonably diligent efforts to locate Ms. Basile in order to interview her, but they could not find her. This was deliberately misleading and false because no reasonable efforts were made by Defendants to contact Ms. Basile before the Article was published. Had such efforts been made, Defendants would have easily been able to find her before the Article was published and to satisfy themselves that she had nothing to do with the cyberattack. By stating that she could not be located, the Article deliberately and disingenuously communicated that Ms. Basile had acted nefariously and was one of the hackers.

10. The combined effect of these false and defamatory statements (the "False Statements") was to communicate, expressly and by implication, insinuation and innuendo, that Ms. Basile was one of the hackers. The thrust of the Article was that the cyberattack must have been carried out by one or more former Sony employees with administrative access privileges, and in order to put a face to their theory, Defendants

6

informed their readers, who comprise the majority of the entertainment world, that (a) Ms. Basile's name was the only alias used by the hackers; (b) Ms. Basile had been employed by Sony but had left that job 3 years previously; and (c) despite reasonable efforts, Ms. Basile could not be found. The truth is that (a) the hackers sent out emails using numerous aliases, (b) Ms. Basile had worked as second assistant accountant for a production company on a film that Sony had distributed but was never employed by Sony, and she certainly never had Sony administrative access privileges, and (c) if Defendants had made a reasonable effort, they would have found Ms. Basile.

11. Defendants acted negligently and with actual malice, in that (a) apart from the hackers' use of her name (which they clearly knew was a false alias, given the other names that were used), they knew that there was nothing to link Ms. Basile with the cyberattack; (b) they knew that low level administrative workers on a film are almost always employed by a production company and not by a studio, and that therefore it was most unlikely that a second assistant accountant such as Ms. Basile would have had the administrative access privileges at Sony that their expert had described as a prerequisite for the cyberattack, (c) they knew that they could have used their position as one of the "trades" to find Ms. Basile, either directly or through colleagues who worked with Ms. Basile on her films, all of which are listed on imdb; and (d) they must have reasonably anticipated the disastrous effect that the Article was going to have on Ms. Basile. However the truth would have destroyed the connection that Defendants were trying to create between Ms. Basile and the cyberattack, and it was therefore sacrificed in order to sensationalize the story.

12. Ms. Basile has suffered general damages in that the False Statements have damaged her reputation, and exposed her to hatred, contempt, ridicule, embarrassment and humiliation. In addition, it has caused her great embarrassment, stress and emotional distress.

13. Ms. Basile has also suffered special damages. Ms. Basile has been working as a freelance production accountant in the film industry for the last 7-8 years. During that time, she has worked on different assignments on a regular basis, with only a few weeks between those assignments. Her earnings in the last 4 years have increased from $41,254 in 2011 to $83,107 in 2014. Despite her strong employment record, she has not received a single job offer commensurate with her experience since the Article was published. The Article has, in short, destroyed her career, and if she is not able to start working again in film industry, her lost earnings as a result of the Article will exceed $1.4 million. She has also experienced abdominal pains after the Article was published that were so severe that her doctors suspected that she had a serious internal problem, and performed surgery. In fact, no physical issue was found – her doctor subsequently told her that her symptoms were almost certainly caused by stress, and the cause of her stress was the loss of her career as a result of the Article being published.

## COUNT I
### (Defamation Per Se)

14. Plaintiff hereby incorporates by reference the allegations in Paragraphs 1 through 13 of this Complaint as if fully set forth in Paragraph 14 of this Count.

15. The False Statements were made with knowledge of their falsity or in reckless disregard of whether they were true or false.

16. The False Statements constitute libel per se because the Article (a) communicates that Ms. Basile was one of the cyber hackers and had therefore committed one or more criminal offenses contrary to 720 ILCS 5/17-5 and numerous other state and federal statutes; and (b) uses words which reflect adversely on Ms. Basile's abilities in her business, trade or profession, accusing her of facilitating hacking and subverting the security measures of an employer.

17. The False Statements were published to third parties in THR'S magazine, on its website and in its mobile and tablet editions.

18. The False Statements were not privileged and cannot be construed innocently, but were made with actual malice.

19. By reason of Defendants' defamatory conduct, Plaintiff has suffered and continues to suffer damage to her good name and reputation, which have been lowered in the estimation of the community, loss of earnings, an operation, humiliation, emotional suffering and mental anguish.

WHEREFORE, Plaintiff Nicole Basile prays that judgment be entered in her favor and against Defendants Prometheus, Kilday and Siegel in an amount in excess of Seventy-Five Thousand Dollars and No Cents ($75,000.00), exemplary damages, costs of suit, and such other and further relief as this Court deems just and appropriate.

## COUNT II
### (False Light)

20. Plaintiff hereby incorporates by reference the allegations in Paragraphs 1 through 13 of this Complaint as if fully set forth in Paragraph 20 of this Count.

21. The False Statements suggested that Ms. Basile was one of the hackers, and thereby placed her in a false light that would be highly offensive to a reasonable person.

22. Defendants knew of and acted with reckless disregard as to (i) the falsity of the False Statements, and (ii) the false light in which Ms. Basile would be placed by suggesting that she was one of the hackers.

23. The False Statements were published to third parties in THR'S magazine, on its website and in its mobile and tablet editions.

24. The False Statements were not privileged and were made with actual malice.

25. By reason of Defendants' conduct, Plaintiff has suffered and continues to suffer damage to her good name and reputation, which have been lowered in the estimation of the community, loss of earnings, an operation, humiliation, emotional suffering and mental anguish.

WHEREFORE, Plaintiff Nicole Basile prays that judgment be entered in her favor and against Defendants Prometheus, Kilday and Siegel in an amount in excess of Seventy-Five Thousand Dollars and No Cents ($75,000.00), exemplary damages, costs of

suit, and such other and further relief as this Court deems just and appropriate.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

Dated: November 6, 2015								Respectfully submitted,

**NICOLE BASILE**


By:      s/Ian Brenson							
             One of her Attorneys


Alexander Rufus-Isaacs, Esq.
Rufus-Isaacs, Acland & Grantham, LLP
232 N. Canon Drive
Beverly Hills, California 90210
(310) 274-3803
aisaacs@rufuslaw.com

Rodney A. Smolla, Esq.
4601 Concord Pike
Wilmington, Delaware 19803
(864) 373-3882
rodsmolla@gmail.com

Ian Brenson, Esq.
Attorney at Law
P.O. Box 666
La Grange, Illinois 60525
(708) 352-9848
ARDC#6200937
ianlegal@sbcglobal.net