IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICOLE BASILE, ) | |
| ) | |
| Plaintiff, ) | 15-cv-10138 |
| ) | |
| v. ) | Judge John Z. Lee |
| ) | |
| PROMETHEUS GLOBAL MEDIA, LLC, ) | |
| GREGG KILDAY, and TATIANA SIEGEL, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Nicole Basile has sued Defendants Prometheus Global Media, LLC, Gregg Kilday, and Tatiana Siegel for defamation per se and false light under Illinois law. Defendants move to dismiss the complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and improper venue under Rule 12(b)(3). Alternatively, Defendants move to transfer venue to the Central District of California under 28 U.S.C. § 1404(a). For the reasons stated herein, the Court grants the motion in part and denies it in part [18].

## Factual Background

In late November 2014, Sony Pictures Entertainment fell victim to a cyberattack by hackers, who released some of the company's confidential data. This information included unreleased films and personal information about its employees.

Sometime between December 3 and 12, 2014, Prometheus published an article written and edited by Kilday and Siegel entitled, "Sony Hack: Studio Security Points to Inside Job." The article appeared in the printed version of *The Hollywood Reporter*, as well as in mobile and tablet editions, and on *The Hollywood Reporter* website. Compl. ¶¶ 2, 3, 5; Kilday Decl. ¶¶ 6–7;

Siegel Decl. ¶¶ 4–5. The article falsely accused Basile as the individual responsible for the cyberattack and identified her as a former Sony employee. Compl. ¶¶ 7–10.

As of December 2014, *The Hollywood Reporter* magazine had a total circulation of 72,000, including a circulation of approximately 1,300 in Illinois. Singer Decl. ¶¶ 12, 14. During December 2014, the online version of the article received 82,808 total page views, including 5,962 page views from readers in Illinois. *Id.* ¶¶ 15, 17.

Kilday resides and works in California. Kilday Decl. ¶¶ 3–4. Siegel lives in Rhode Island and worked with *The Hollywood Reporter*'s office in Los Angeles, California, while preparing the article. Siegel Decl. ¶¶ 3, 5. The editing and publishing of the article occurred in the Los Angeles, California, office. *Id.* ¶ 8; Kilday Decl. ¶ 8.

As for Plaintiff, Basile was living in Deming, New Mexico, when the article was published; she had been living there for a total of two months at the time. Pl.'s Decl. ¶ 17. Within weeks after the article's publication, Basile left New Mexico and began living with her sister in Manhattan, Illinois. *Id.* ¶ 18. According to Basile, the article's defamatory statements caused her to suffer tremendous stress, and she began experiencing abdominal pain, eventually requiring surgery on March 30, 2015, at the St. Joseph Medical Center in Joliet, Illinois. *Id.* ¶ 20. In addition, Basile claims that, since the article was published, she has been unable to find work in the film industry and was forced to work as a part-time waitress in Manhattan, Illinois. Compl. ¶¶ 6, 13, 21. Basile believes that employers in the film industry have been unwilling to hire her due to the false statements in the article. Compl. ¶¶ 6, 13.

## Legal Standard

Defendants have moved to dismiss the complaint based on lack of personal jurisdiction and improper venue under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3). In the

alternative, Defendants have moved to transfer venue to the Central District of California under 28 U.S.C. § 1404(a).

When a defendant challenges personal jurisdiction under Rule 12(b)(2), the Court first must decide whether any material facts are in dispute. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). If such a dispute exists, the Court must hold a hearing at which the plaintiff must establish personal jurisdiction by a preponderance of the evidence. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003). Where, as here, there are no disputes of material facts, "the party asserting personal jurisdiction need only make out a *prima facie* case of personal jurisdiction." *Hyatt*, 302 F.3d at 713.

Similarly, when venue is challenged under Rule 12(b)(3), the "court takes all allegations in the complaint as true, unless contradicted by the defendant's affidavits." *Nagel v. ADM Inv'r Servs., Inc.*, 995 F. Supp. 837, 843 (N.D. Ill. 1998). The plaintiff bears the burden of establishing that jurisdiction and venue are proper. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (jurisdiction); *Grantham v. Challenge-Cook Bros., Inc.*, 420 F.2d 1182, 1184 (7th Cir. 1969) (venue).

Under section 1404(a), a transfer to another venue may be appropriate "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). When considering a motion to transfer venue, courts should recognize the burden that transferring will place on each party, and engage in a "case-by-case consideration of convenience and fairness." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977 (7th Cir. 2010).

## Analysis

### I. Motion to Dismiss for Lack of Personal Jurisdiction

Personal jurisdiction comes in two forms—general or specific. "If the defendant's contacts are so extensive that it is subject to general personal jurisdiction, then it can be sued in the forum state for any cause of action arising in any place. More limited contacts may subject the defendant only to specific personal jurisdiction, in which case the plaintiff must show that its claims against the defendant arise out of the defendant's constitutionally sufficient contacts with the state." *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). "In either case, the ultimate constitutional standard is whether the defendant had "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). Basile concedes that general jurisdiction is absent here and relies upon the theory of specific jurisdiction to establish personal jurisdiction over Defendants.

A court may exercise specific jurisdiction over a defendant when "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo*, 601 F.3d at 702. Furthermore, because this Court is sitting in diversity jurisdiction, it "must apply the personal jurisdiction rules of the state in which it sits." *Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015). And "[t]he governing statute in Illinois permits its courts to exercise personal jurisdiction up to the limits of the Due Process Clause of the Fourteenth Amendment." *Id.*; *see* 735 Ill. Comp. Stat. 5/2-209(c).

In a defamation case such as this, any inquiry into personal jurisdiction must start with *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774–75 (1984). In *Keeton*, the plaintiff, who was a New York resident, brought a defamation case in a New Hampshire court against Hustler Magazine, which was based in Ohio. The Supreme Court held that personal jurisdiction over Hustler existed in New Hampshire because it regularly sold its magazines in New Hampshire. "Such regular monthly sales of thousands of magazines cannot by any stretch of the imagination be characterized as random, isolated, or fortuitous. It is, therefore, unquestionable that New Hampshire jurisdiction over a complaint based on those contacts would ordinarily satisfy the requirement of the Due Process Clause that a State's assertion of personal jurisdiction over a nonresident defendant be predicated on minimum contacts between the defendant and the State." *Id.*, 465 U.S. at 775. The Court added, "There is no unfairness in calling [the magazine] to answer for [its] contents . . . wherever a substantial number of copies are regularly sold and distributed." *Id.* at 781.

Although *The Hollywood Reporter* Magazine too is a nationally circulated publication, Defendants argue that the Court should not apply *Keeton*, but the more rigorous test announced in *Calder v. Jones*, 465 U.S. 783, 789 (1984). In *Calder*, the plaintiff brought a libel claim against the *National Enquirer, Inc.,* as well as the president of the National Enquirer and one of its reporters, both of whom lived in Florida. *Id.* The individual defendants contested personal jurisdiction (although the company did not), arguing that they had insufficient contacts with California and were not responsible for the circulation of the article in California. *Id.* The Supreme Court rejected these arguments, noting that the individual defendants had prepared the article, which they knew would injure the plaintiff, and were aware that the "brunt of that injury would be felt by [the plaintiff] in the State in which she lives and works and in which the

*National Enquirer* has its largest circulation." *Id.* at 789–90. "Under the circumstances, petitioners must reasonably anticipate being haled into court there to answer for the truth of the statements made in their article." *Id.* at 791 (internal quotations omitted).

The Seventh Circuit has interpreted *Calder* to require "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Tamburo*, 601 F.3d at 703. But, in *uBID, Inc. v. GoDaddy Grp., Inc.*, the Seventh Circuit observed that it is unnecessary to proceed under *Calder* if a defendant has sufficient contacts under the standard established in *Keeton*. *See* 623 F.3d 421, 427 n.1 (7th Cir. 2010) ("Because GoDaddy's actual contacts with Illinois meet the constitutional standard for minimum contacts under *Keeton*, we need not decide whether sufficient contacts should be imputed under the *Calder* 'express aiming' test announced by the Supreme Court."). With this in mind, the Court will consider each Defendant separately.

### A. Defendant Prometheus

Basile has made a prima facie showing that Prometheus has sufficient contacts with Illinois under *Keeton* by purposefully directing its activities at Illinois and availing itself of the privilege of conducting business in Illinois. First, it is undisputed that Prometheus circulates approximately 1,300 copies of *The Hollywood Reporter* annually in Illinois. And, although Prometheus argues that the number represents only 1.8% of its total circulation, the consistent and regular nature of those sales demonstrate that Prometheus intentionally directs its business to Illinois, and the sales of the magazine in Illinois cannot be considered a fortuitous event or

random occurrence.[1] What is more, Prometheus's own media kit boasts to its existing and would-be advertisers that *The Hollywood Reporter* is distributed to industry moguls "*in metropolitan areas from coast to coast*." Pl.'s Resp. Mem., Ex. A, Media Kit, THR Circulation. These materials further evidence Prometheus's efforts to purposely target Chicago, as well as the Illinois market, for distribution and sales of *The Hollywood Reporter*. Accordingly, the Court finds that Prometheus has sufficient minimum contacts with Illinois.

But minimum contacts, alone, are not enough to establish specific personal jurisdiction. Not only must Prometheus have minimum contacts with Illinois, but Basile's claim must "arise out of or relate to" those contacts. *uBID*, 623 F.3d at 429. How extensive the relationship between the contacts and claim must be is a matter of some debate. "[S]ome circuits have analogized the required relationship between contacts and claims to the tort concepts of but-for and proximate causation." *Id.*, 623 F.3d at 430 (citing cases). For its part, the Seventh Circuit declined to adopt either approach, finding the but-for test over-inclusive and the proximate causation test under-inclusive. *Id.* Instead, it adopted the "quid pro quo" formulation espoused by the Third Circuit in *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312 (3d Cir. 2007): "out-of-state residents may avail themselves of the benefits and protections of doing business in a forum state, but they do so in exchange for submitting to jurisdiction in that state for claims arising from or relating to those activities." *Id.* (citing *O'Connor*, 496 F.3d at 322). In the end,

---

[1] Prometheus relies on *Scherr v.* Abrahams, No. 97 C 5453, 1998 WL 299678 (N.D. Ill. May 29, 1998), to argue that 1.8% of its total circulation is insufficient to demonstrate intent to direct its activities to Illinois. But in *Scherr*, the sole basis for asserting personal jurisdiction over the defendant was that it distributed fewer than 60 copies of the publication in Illinois every other month. *Id.*, 1998 WL 299678 at *3. Not only did Prometheus distribute more copies of its magazine, but its promotional materials taut its efforts to distribute its magazine in cities "from coast to coast." Similarly, *Chaiken v. VV Publ. Cop.*, 119 F.3d 1018 (2d Cir. 1997), involved only a total of 183 copies of the foreign newspaper without any evidence that defendant expressly aimed its actions at the forum state.

the Seventh Circuit concluded that "[t]he precise causal relationship between contacts and claim was not important; what was required was that the relationship be 'intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable." *Id.* (citing *O'Connor*, 496 F.3d at 323).

In this case, Prometheus argues that Basile's claim is unrelated to its Illinois-based conduct because its conduct was not aimed at Illinois in any way. To the contrary, Prometheus distributes its magazine in Illinois, in part, because it wants to "reach to target a mix of industry moguls, A-list celebrities and consumer influential in metropolitan areas from coast to coast." *See* Pl.'s Resp. Mem., Ex. A, Media Kit, *THR* Circulation. Basile alleges that her injury stems from the fact that the purportedly defamatory statements were read by the exact industry decisionmakers and insiders in Illinois that the magazine is intended to influence. Compl. ¶¶ 13, 19, 25. Given this, the relationship between Prometheus's Illinois contacts and Basile's claims is "close enough to make the relatedness quid pro quo balanced and reasonable." *uBID*, 623 F.3d at 431.

For these reasons, the Court finds that Prometheus could reasonably anticipate being haled into an Illinois court in an action based on the contents of its magazine.

### B. Defendants Gregg Kilday and Tatiana Siegel

With regard to Defendants Kilday and Siegel, however, the Court reaches a different conclusion. Basile has not made a prima facie showing that Kilday or Siegel has sufficient contacts with Illinois under the tests articulated in *Keeton* or *Calder*.

First, neither Kilday nor |Siegel has ever lived or worked in Illinois. Kilday Decl. ¶ 11; Siegel Decl. ¶ 11. Neither owns any property in Illinois. Kilday Decl. ¶ 11; Siegel Decl. ¶ 11. Neither visited Illinois or contacted anyone in Illinois while researching and writing the article.

Kilday Decl. ¶ 10; Siegel Decl. ¶ 9. Furthermore, Kilday is a film editor, Siegel is a senior film writer, and there is nothing to indicate that either had any personal involvement with distributing or circulating copies of the article in Illinois. Kilday Decl. ¶ 2; Siegel Decl. ¶ 2. As such, Basile has not established that Kilday or Siegel have purposefully directed their activities at Illinois or availed themselves of the privilege of conducting business in Illinois.

Nor do they meet the "express aiming" test employed by the Supreme Court in *Calder*. The article does not mention or allude to Illinois, to anyone then-residing in Illinois, or any entity known to conduct business in Illinois. Nor is there any indication that Kilday or Siegel were aware that Basile was from Illinois, would relocate to Illinois after the article's publication, or had family in Illinois. The only connection (to use that term generously) Kilday or Siegel had with Illinois for purposes of this litigation is that, shortly after the article was published, Basile decided on her own accord to move to Illinois. Such a weak and tangential connection with Illinois does not provide a reasonable basis for the Court to exercise personal jurisdiction over Kilday and Siegel in Illinois. The Court therefore grants Defendants' motion to dismiss as to Kilday and Siegel, and the claims against them are dismissed without prejudice.

## II. Motion to Dismiss for Improper Venue

Next, Prometheus argues that venue is improper in the Northern District of Illinois because it is not an Illinois resident and the events leading to the article's publishing did not occur in Illinois. A civil case can be filed in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Basile alleges that the injury caused by Prometheus's actions—specifically, the damage to her employment opportunities and physical harm—has occurred in Illinois. The principal injury giving rise to a defamation claim occurs where Basile's reputation would suffer the most harm—where she lives and works and where the people with whom she has personal or commercial relationships reside. *See Kamelgard v. Macura*, 585 F.3d 334, 342 (7th Cir. 2009). Here, Basile alleges that she has felt the sting of the defamatory statements in Illinois because she lives here, she has unsuccessfully attempted to find work in her field here, and those with whom she has close personal relationships live here. Pl.'s Decl. ¶¶ 18, 20–21. In addition, the allegedly defamatory statements were distributed directly to Illinois via printed magazines and other media. Thus, the Northern District of Illinois is the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *See* 28 U.S.C. § 1391(b)(2). Therefore, venue is appropriate as to Prometheus in the Northern District of Illinois.

### III. Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)

In the alternative, Prometheus contends that this suit should be transferred to the Central District of California. For the convenience of parties and witnesses, and in the interests of justice, a federal district court may transfer any civil action to any other district where it may have been brought. 28 U.S.C. § 1404(a).

In evaluating a motion to transfer, courts look at two categories of interests: private and public. *See Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 979 (7th Cir. 2010). Private interests include the convenience of the parties, availability and access to witnesses, the location of material events, and the relative ease of access to sources of proof. *See id.* at 978. Public interests include the congestion of the respective dockets, each court's familiarity with the relevant law, the desirability of resolving controversies in each location, and the relationship of the community to the controversy. *See id.*

There is a strong presumption in favor of the plaintiff's choice of forum if it is where the plaintiff resides. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981). The party seeking to transfer the case has the burden of showing that the transferee forum is clearly more convenient. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989). "Where the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer." *Research Automation*, 626 F.3d at 979.

Here, Prometheus has not established that litigating in California is clearly more convenient with respect to private interests. Indeed, transferring this case to California would merely shift inconvenience from one party to another. In addition, Prometheus has not pointed to any third-party witnesses that would be inconvenienced by litigating in Illinois. And, in this age of electronic document transmission, the parties and Court can easily access any necessary documents in Chicago just as well as in the Central District of California. And, while many of the events surrounding the article's publication took place in California, the principal injury to Basile took place in Illinois. Accordingly, on balance, the private interests do not overcome the strong presumption in favor of Basile's choice of the forum.

Moreover, Prometheus has not shown that the public interests clearly favor transferring the case to the Central District of California. On average it takes two months longer to resolve a case short of trial and approximately one year longer to get to trial in the Northern District of Illinois. *See* http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2015/12/31-3. This factor weighs slightly in favor of transferring the case to California. On the other hand, in diversity cases, it is often advantageous if the federal judges who preside over cases are familiar with the applicable state law—here Illinois law; therefore, this factor weighs slightly against transfer. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986).

In addition, both California and Illinois have an interest in, and relationship to, the controversy. As such, the Court finds that the public interest factors do not weigh in favor of or against transfer.

Ultimately, Prometheus has failed to establish that the balance of the private and the public interests strongly favors transferring this case to the Central District of California. Accordingly, the motion to transfer is denied.

### Conclusion

For the reasons stated herein, the Court grants in part and denies in part Defendants' motion to dismiss, or in the alternative, to transfer [18]. With regard to Prometheus, the Court denies the motion to dismiss for lack of personal jurisdiction and for improper venue and the motion to transfer. The Court grants the motion to dismiss for lack of personal jurisdiction as to Kilday and Siegel, and strikes as moot the motion to dismiss for improper venue and the motion to transfer as to them. The claims against Defendants Kilday and Siegel are thus dismissed without prejudice, and they are terminated as defendants.

**IT IS SO ORDERED.**          **ENTERED 5/24/16**

_____

**John Z. Lee**
**United States District Judge**