IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NICOLE BASILE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| PROMETHEUS GLOBAL MEDIA, | ) | 15 C 10138 |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Nicole Basile has sued Defendant Prometheus Global Media, LLC for defamation *per se* (Count I) and false light (Count II) under Illinois law. Defendant has moved for a judgment on the pleadings, arguing that Plaintiff's defamation *per se* and false light claims fail because the allegedly defamatory statements can be given an innocent construction. Defendant also asserts that the California anti-SLAPP statute warrants dismissal of Plaintiff's claims. For the reasons stated herein, the Court grants Defendant's motion for judgment on the pleadings.

## Factual Background

In late November 2014, Sony Pictures Entertainment fell victim to a cyberattack by hackers, who obtained and released some of the company's confidential data. This information included unreleased films and certain personal information about its employees.

Sometime between December 3 and 12, 2014, Prometheus published an article entitled, "Sony Hack: Studio Security Points to Inside Job." The article appeared in the printed version of *The Hollywood Reporter*, as well as in mobile and tablet editions, and on *The Hollywood Reporter* website. Compl. ¶¶ 2, 3, 5; Kilday Decl. ¶¶ 6–7; Siegel Decl. ¶¶ 4–5. The article stated, "[E]mails pointing journalists to allegedly stolen files posted on a site called Pastebin

came from a sender named 'Nicole Basile.' A woman by that name is credited on IMDb as an accountant on the studio's 2012 hit film The Amazing Spider Man, and her LinkedIn page says she worked at Sony for one year in 2011. Basile couldn't be reached for comment and the studio declined to confirm if she works or has worked there." Compl. ¶¶ 7–10. .

According to Basile, the article caused her tremendous stress, and she began experiencing abdominal pain, eventually requiring surgery on March 30, 2015, at St. Joseph Medical Center in Joliet, Illinois. *Id.* ¶ 20. In addition, Basile claims that, since the article was published, she has been unable to find work in the film industry and was forced to work as a part-time waitress in Manhattan, Illinois. *Id.* ¶¶ 6, 13, 21. Prior to the article's publication, Basile had worked in the film industry as a freelance production accountant for seven to eight years. *Id.* ¶¶ 6, 13. Basile believes that employers in the film industry have been unwilling to hire her due to the false statements in the article. *Id.*

## **Legal Standard**

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is evaluated under the same standard that applies to motions under Fed. R. Civ. P 12(b)(6) for failure to state a claim. *Guise v. BWM Mortg., LLC*, 377 F.3d 795, 798 (7th Cir. 2004). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Furthermore, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although the complaint does not have to include "detailed factual allegations," it must "include sufficient facts to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011). As in Rule 12(b)(6) motions, when deciding a Rule 12(c) motion, the court

2

accepts "all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Forseth v. Sussex*, 199 F.3d 363, 368 (7th Cir. 2000).

## Analysis

### I. Defamation *Per Se*

Defendant has moved for judgment on the pleadings with respect to Count I, Plaintiff's claim for defamation *per se*. Here, Basile alleges that the statements in the article implicating her in the cyberattacks were made with knowledge of their falsity or in reckless disregard of whether they were false or true.[1] Defendant responds that the statements do not fall into any of the recognized categories that comprise defamation *per se* and that the statements are capable of innocent construction. Moreover, Defendant argues that the statements are protected by the California anti-SLAPP law and not subject to suit because they constitute "act[s] in furtherance of [Defendant's] right of petition or free speech under the United States or California Constitution in connection with a public issue." Cal. Civ. Proc. Code § 425.16.

Under Illinois law, "[a] defamatory statement is a statement that harms a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him." *Solaia Tech., LLC v. Specialty Publ'g Co.*, 852 N.E.2d 825, 839 (Ill. 2006) (internal citations omitted). To state a claim for defamation, a plaintiff must allege facts demonstrating that "the defendant made a false statement about the

---

[1] In her Complaint, Plaintiff requests special damages, but such damages are only available under a claim for defamation *per quod*. *See Huon v. Breaking Media, LLC*, 75 F. Supp. 3d 747, 769 (N.D. Ill. 2014). Here, it is clear that Plaintiff has brought a claim asserting only defamation *per se*, *see* Compl. ¶¶ 14–19; thus, the Court need not address Plaintiff's argument raised in her response brief seeking special damages. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984) (pleadings cannot be amended by a party's brief in opposition to a motion to dismiss); *see also Holub v. Live Nation Entm't, Inc.*, No. 13 C 2008, 2013 WL 5290049, at *2 (N.D. Ill. Sept. 18, 2013) (A party "cannot implicitly amend [its pleadings] in [its] response.").

plaintiff, the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Id.*

A defamatory statement is deemed to be defamatory *per se* if it consists of:

> (1) words that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and (5) words that impute a person has engaged in adultery or fornication.

*Id.* (internal citations omitted).

Plaintiff first contends that the statements in the article are defamatory *per se* because they impute that the Plaintiff has committed a crime, namely the illegal cyberattack. To be defamatory *per se* under the first category, the crime in question "must be indictable, involve moral turpitude, and be punishable by incarceration rather than a fine." *Cantrell v. Am. Broad. Cos.*, 529 F. Supp. 746, 755 (N.D. Ill. 1981). In interpreting statements that purport to impute a crime, the statements "must be taken in the sense which readers of common and reasonable understanding would ascribe to them and must be construed in the context of the entire [statement]." *Newell v. Field Enters., Inc.,* 415 N.E.2d 434, 436 (Ill. App. Ct. 1980). Furthermore, the statement must actually indicate that the person has *committed* a crime, and it is not enough to state that a person is merely being investigated for a crime or is otherwise associated with a criminal act. *See Kapotas v. Better Gov't Ass'n*, 30 N.E.3d 572, 587 (Ill. App. Ct. 2015) ("A statement that an individual has been arrested or charged with an offense is not evidence of guilt in that offense and thus does not impute the commission of a crime.").

*Kapatas* is illustrative. In that case, newspaper articles reported that the plaintiff, a surgeon, was "given checks amounting to six figures with no work to show for it" and was

involved in "double dipping." The trial court dismissed the claim, and the Illinois Appellate Court affirmed, noting that the article had not claimed that the receipt of the checks and the double dipping were a result of criminal activity on the part of the plaintiff. 30 N.E.3d at 590-91.

Similarly, here, *The Hollywood Reporter* article did not state that Basile had committed any criminal acts or the cyberattack. Rather, the article notes only that Basile's name was used in conjunction with an email that was sent to the media informing them of the cyberattack. In fact, the article recognizes that the identity of the actual perpetrators are unknown, calling the incident "a chilling Hollywood whodunit." Furthermore, given the prevalence of email hacking, the article was careful to indicate that the perpetrators had used an email account "from a sender named Nicole Basile"; it did not claim that Basile was the one who actually sent the email in question. Furthermore, rather than focusing on Basile as the alleged perpetrator, the article explains that any number of employees could be the perpetrator, stating "[f]or a studio – which has laid off hundreds of employees over the past year in an effort to contain costs – the possibility of a disgruntled employee wreaking havoc is very real." Because the article does not attribute criminal activity to Basile, her claim under the first defamation *per se* category is without merit.

Basile also contends that the article's statements constitute defamation *per se* under the third and fourth categories—"words that impute a person is unable to perform or lacks integrity in performing her employment duties" and "words that impute a person lacks ability or otherwise prejudices that person in her profession." *See Solaia*, 852 N.E.2d at 839. As a general matter, these categories are considered in tandem, and "to succeed, the plaintiff must have been accused of lacking *ability in his trade* or doing something bad *in the course of carrying out his job*." *Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005) (emphasis in original). Significantly, it is not

sufficient that the statement implies that the subject lacked integrity or judgment. *Id.* at 858.

In *Cody*, a general sales manager sued his former employer for defamation *per se* based on the employer's statement that the plaintiff had posted pornography on the employer's website. *Id.* at 857. The district court dismissed the claim, and the Seventh Circuit affirmed, holding that the third and fourth categories had not been satisfied because, although the statements may have impugned the individual's integrity and character, they "did not disparage the plaintiff's skills as a manager." *Id.* at 858.

Similarly, in *Sangston v. Ridge Country Club*, a country club manager sued his former employer for defamation *per se*, alleging that the employer had told a third party that the plaintiff had made unauthorized 1-900 calls while at work. No. 92 C 1981, 1992 WL 317138, at *3–4 (N.D. Ill. Oct. 29, 1992), *aff'd*, 35 F.3d 568 (7th Cir. 1994). There too, the Seventh Circuit concluded that the statement did not "necessarily impute a lack of integrity or lack of professional skill." *Id.* at *6.

In this case, Plaintiff was apparently a production accountant at Sony, and nothing in the article disparages her skills as a production accountant or accuses her of being unable to perform the specific duties of a production accountant. Nor does Plaintiff argue that maintaining the integrity of Sony's computer systems was part of her job responsibilities. Accordingly, the statements in the article do not fall within the third and fourth categories of defamation *per se*.

Furthermore, under Illinois law, it is "well settled that even if an alleged statement falls into one of the categories of words that are defamatory *per se*, it will not be actionable if it is reasonably capable of an innocent construction." *Kapotas*, 30 N.E.2d at 591; *see Tuite v. Corbitt*, 866 N.E.2d 114, 127 (Ill. 2006). Known as the innocent construction rule, it provides that a "written or oral statement is to be considered in context, with the words and the implications

6

therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted . . . it cannot be actionable *per se*." *Chapski v. Copley Press*, 442 N.E.2d 195, 199 (Ill. App. Ct. 1982). In applying this rule, if a statement is capable of a defamatory construction or an innocent construction, the innocent construction must be adopted only if it is reasonable, *see Tuite*, 866 N.E.2d at 123 (citing *Bryson v. News Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1215 (Ill. 1996)). In this way, the rule "advances the constitutional interests of free speech and free press and encourages the robust discussion of daily affairs." *Id*. at 127.

*Salamone v. Hollinger International Inc.* is noteworthy. 807 N.E.2d 1086 (Ill. App. Ct. 2004). There, the newspaper article in question, which was entitled "Mob links hurt Rosemont casino bid," characterized the plaintiff, who had invested in the casino project, as a "reputed organized crime figure." Applying the innocent construction rule, the Illinois appellate court held that the article "characterized plaintiff not as a mobster, but as a person who is believed to be, possibly erroneously, an organized crime figure." *Id.* at 1091.

If the statement in *Salamone* is reasonably capable of an innocent construction, the statement in the instant case is as well. Here, the article asserts only that an email address bearing Basile's name had been used in connection with the attack and that Basile had some connection to Sony, as shown by her LinkedIn profile. The article does not even go so far as to call Basile an "alleged hacker" or "reputed hacker," and it does not identify Basile as someone who is the subject of an investigation of any kind.

What is more, the balance of the article explains the ongoing investigations of the cyberattack and lays out other possible avenues for inquiry. *See Green v. Trinity Int'l Univ.*, 801 N.E.2d 1208, 1219 (Ill. App. Ct. 2003) (a court "must consider written or oral statements in

7

context, giving the words and their implications their natural and obvious meaning"). In this context, the statements about Basile may be reasonably viewed as part of the investigation into the cyberattack, including the potential that hackers may have commandeered internal Sony email accounts. Because the Court concludes that the article's statements are capable of an innocent construction, and for all of the reasons provide above, the Court grants Defendant's motion for judgment on the pleadings as to Basile's defamation claim in Count I.[2]

## II.    False Light

In Count II, Plaintiff claims that the statements in the article placed her in a false light that would be highly offensive to a reasonable person. To state a false light claim under Illinois law, Plaintiff must establish that (1) she was placed in a false light before the public as a result of the defendant's action; (2) the false light in which she was placed would be highly offensive to a reasonable person; and (3) the defendant acted with actual malice. *Mancari v. Infinity Broad. E., Inc.*, No. 04 C 3599, 2004 WL 2958765, at *2 (N.D. Ill. Nov. 25, 2004). However, where a false light claim is based on statements that are alleged to be defamation *per se*, the false light claim fails if the defamation *per se* claim also fails. *See Seith v. Chi. Sun-Times, Inc.*, 861 N.E.2d 1117, 1130–31 (Ill. App. Ct. 2007).

Here, Plaintiff's false light claim is grounded on the same statements that the Court has held are insufficient to support a claim of defamation *per se*. Accordingly, Defendant's motion for judgment on the pleadings as to Count II also is granted.

---

[2]    Because the Court dismisses Basile's defamation claim based on her failure to plead defamation *per se*, the Court need not address Defendant's affirmative defense under the California anti-SLAPP statute.

## **Conclusion**

For the reasons stated herein, Defendant's motion for judgment on the pleadings is granted [36]. This case is hereby terminated.

**IT IS SO ORDERED.**　　　　　**ENTERED　12/7/16**

_____
**John Z. Lee**
**United States District Judge**